# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CYNTHIA SUSAN DESTEFANI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-15-278-RAW-KEW |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Cynthia Susan Destefani (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on November 29, 1962 and was 51 years old at the time of the ALJ's decision. Claimant completed her education through the ninth grade, unsuccessful in her attempt to obtain a GED. Claimant has worked in the past as a waitress, bartender and

fast food restaurant worker. Claimant alleges an inability to work beginning August 25, 2011 due to limitations resulting from leg, foot, and knee problems, staph infection, Lyme disease, shoulder spur, depression, anxiety, and ADD.

**Procedural History**

On August 25, 2011, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. An administrative hearing was conducted by Administrative Law Judge ("ALJ") Bernard Porter on November 14, 2013 in McAlester, Oklahoma. The ALJ issued an unfavorable decision on January 10, 2014. On May 29, 2015, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform light work with limitations.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in failing to accord appropriate weight to the opinion of her treating physician.

**Consideration of the Treating Physician's Opinion**

In his decision, the ALJ determined Claimant suffered from the severe impairments of lumbar disc disease, cervical disc disease, atherosclerotic vascular disease, degenerative joint disease of the knees, polysubstance abuse, right shoulder arthritis, attention deficit disorder ("ADD"), recurrent staph infection, history of right heel fracture, depression, and anxiety. (Tr. 13). He concluded that Claimant retained the RFC to perform light work except that Claimant could lift 20 pounds occasionally and ten pounds frequently and was able to push and pull as much as she could carry. She could sit for six hours in an eight hour workday and stand or walk for six hours in an eight hour workday. Claimant could occasionally reach overhead and frequently handle, finger, and feel with the right upper extremity. Claimant could occasionallyl climb ramps or stairs, occasionally balance, kneel, stoop, and crouch, but never crawl. She must avoid unprotected heights, moving machine parts, and temperature extremes. Claimant required a sit or stand option at least every 30 minutes. She was limited to simple tasks with simple work decisions, occasional

5

contact with co-workers and supervisors but no contact with the public. Claimant's time off task would be accommodated by the normal work breaks. Claimant would be off task up to five percent of the workday and miss up to one day of work each moth due to episodic symptomatology. (Tr. 16). After consultation with a vocational expert, the ALJ determined Claimant could perform the representative jobs of electrical assembler and convey line worker. The ALJ determined that the former job required a 50% reduction in available jobs due to Claimant's requirement for a sit or stand option. The latter job was found by the ALJ to exist in sufficient numbers. (Tr. 20). Based upon these findings, the ALJ concluded Claimant was not disabled from August 25, 2011 through the date of the decision. (Tr. 21).

Claimant contends the ALJ failed to properly evaluate and weigh the opinion of his treating physician, Dr. Robert Woodruff. Dr. Woodruff first began treating Claimant on July 8, 2008. (Tr. 495). On February 28, 2013, Dr. Woodruff completed a medical source statement – physical regarding Claimant. He opined Claimant could occasionally and frequently lift/carry ten pounds; stand/walk less than two hours in an eight hour workday; sit for less than two hours in an eight hour workday; must periodically alternate sitting and standing to relieve pain or discomfort; engage in unlimited

6

pushing and pulling subject to the weight restrictions. (Tr. 533). Dr. Woodruff found Claimant could never climb, stoop, kneel, crouch, or crawl. She could occasionally balance. Claimant could reach less than occasionally with her right hand/arm and occasionally reach with her left hand/arm. Claimant was to avoid even moderate exposure to extreme cold, humidity, noise, and fumes, odors, dusts, gases, and poor ventilation. She should avoid all exposure to hazards. She should also avoid concentrated exposure to wetness and extreme heat. (Tr. 534).

Dr. Woodruff also completed a medical source statement - mental for Claimant of the same date as the prior statement. He found Claimant suffered a marked limitation in the areas of interacting appropriately with the public; interacting appropriately with supervisors; and, possibly, the ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.[2]

He also found Claimant to be moderately limited in the areas of understanding and remembering simple instructions; the ability to make judgments on simple work-related decisions; responding

---

[2] The Court uses the term "possibly" because Dr. Woodruff marked the boxes on the source statement for both "moderate" and "marked" limitations in this functional area.

7

appropriately to usual work situations and to changes in a routine work setting; and, possibly, the ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 536-37).

The ALJ found Dr. Woodruff's opinion on Claimant's physical restrictions was entitled to "limited weight because the medical evidence of record, subjective complaints and the claimant's activities of daily living did not support some of the sedentary exertional level (sic) and extreme limitations." (Tr. 18). No further explanation for the reduced weight is provided by the ALJ.

With regard to Dr. Woodruff's opinion on Claimant's mental limitations, the ALJ stated it was entitled to "great weight because it is consistent with the medical evidence of record, consultative exam, and her activities of daily living." (Tr. 18).

The ALJ generally recites medical evidence which consists of statements that Claimant's pain is treated with medications, range of motion appears normal, normal gait, good muscle strength, and negative straight leg raising. He then repeatedly recites a generalized statement that the "treatment notes, physical examinations, diagnostic testing, consultative report, subjective complaints, and her activities of daily living suggest that her

8

physical impairments are not as severe as she alleged." (Tr. 17).

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a

9

specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ's recitation does not take into account Dr. Woodruff's treatment records. He consistently found Claimant to suffer from arthralgias, decreased range of motion, and deformity in the right ankle. (Tr. 499-502). Some support stands in the record for Dr. Woodruff's opinion. The ALJ shall on remand provide a more detailed explanation of the medical evidence which directly contradicts Dr. Woodruff's opinion evidence.

This Court declines Claimant's invitation to directly award benefits based upon the amount of time the applications have been

10

pending. Rightly or wrongly, the time (four years) is not unusual for the Social Security process.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.

The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 15th day of August, 2016.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE